Appellant was indicted and convicted of illegally selling a controlled substance, methaqualone, in violation of § 20-2-70, Code of Alabama 1975. An Etowah County Circuit judge sentenced the appellant to 25 years imprisonment.
The State's first witness was Sheila Mitchell, the buyer of the drugs. Ms. Mitchell testified that she wished to buy some "quaaludes" from appellant for a friend. On the morning of February 17, 1981, Ms. Mitchell drove to a rural grocery store and spotted appellant's car. She left her car and got into appellant's car on the passenger's side. She counted out $360 and gave the money to appellant. Appellant pulled out a bag containing 200 "quaaludes" from under his car seat and handed the "quaaludes" to Ms. Mitchell. At that time, the two were surrounded by undercover agents and arrested.
The State then called Johnny Grant of the Etowah Sheriff's Office to the stand. He and his partner went to the grocery store around 8:30 a.m. on February 17, 1981. The men waited in the store, watching for appellant and Ms. Mitchell. Around 9:00 a.m., the men noticed a car pull into the store parking lot and park near a utility pole. Shortly thereafter, appellant pulled up. Deputy Grant walked from the back of the store and stood behind a parked trailer truck. He saw Ms. Mitchell get out of her car and get into appellant's car. Deputy Grant observed appellant hand towards Ms. Mitchell a plastic bag containing what later was identified as methaqualone. He also saw appellant with money in his hands. As appellant was being arrested, Deputy Grant heard appellant say, "You've got me. That's enough."
The State called two other officers, Policemen J.J. Alexander and Roy Harbin, who observed the drug transaction from a parking lot across the road. The two officers essentially corroborated Deputy Grant's testimony. Policeman Harbin, after giving appellant his Miranda warnings and obtaining a written waiver of counsel from appellant, took down appellant's statement. Appellant told the officers that he was not the one they wanted, "that we [the police] wanted the big people and not the little dealers, we had overestimated at how big of a dealer he was." Appellant also told the officers that their estimate that the pills would bring $5.00 apiece on the street was too high and that he would have never sold one for more than $1.75.
The State then established a chain of custody of the seized bag ending with David Thorn of the State Department of Forensic Sciences. Mr. Thorn, after being qualified as an expert, testified that the substance was methaqualone.
The State's last witness was Dolores Parsons, the Circuit Court Clerk for Etowah County. Ms. Parsons identified two certified copies of minute entries which stated that appellant had pleaded guilty to the illegal sale of marijuana, and in both cases was represented by counsel.
Appellant testified in his own behalf. He testified that Ms. Mitchell had called in and offered to sell him the quaaludes because she needed to make money quickly.
On cross-examination, appellant was asked if he had previously been convicted of grand larceny, sale of marijuana, sale and possession of marijuana, buying and receiving stolen property and counterfeiting. Appellant admitted all but the marijuana charges, stating that he could not remember the drug convictions.
During a pre-trial hearing appellant moved for a continuance based on the absence of appellant's retained counsel, Mr. Cecil Elledge. Mr. Elledge had been hospitalized a few days before the hearing. Appellant contends that the trial court improperly denied his motion.
The law is well settled in Alabama that the question of granting or refusing a continuance rests within the sound discretion of the trial court and will not be reviewed on appeal absent a clear showing of abuse of such discretion.Watson v. State, Ala.Cr.App., 389 So.2d 961 (1980); Childers v.State, Ala.Cr.App., 389 So.2d 193 (1980). A review of the record convinces us there was no such abuse. *Page 143 
The record shows that appellant was arraigned on April 30, 1981. On May 4, 1981, based on appellant's motion for continuance, the case was continued until June 22, 1981. On June 19, 1981, appellant retained the services of Mr. Elledge and the trial court again continued the case on June 22, 1981, in order to allow the newly retained counsel adequate time to prepare for the trial. Trial was set for Monday, August 31, 1981.
On Friday, August 28, Mr. Elledge informed the trial court that he was entering the hospital and would not be available for trial. On Monday, August 31, Mr. Elledge's law partner appeared before the court and asked for a continuance. During that hearing, Mr. Elledge's partner, Mr. Gary Smith, admitted that he had some degree of familiarity with the case but did not feel that he was prepared to try the case alone. The State argued that it was worried about the possibility of appellant's being paroled before he could be tried at the next term of court. Apparently appellant was in jail for another offense and was due parole consideration one month from the hearing. The State without elaboration also argued that it was concerned about the availability and safety of its primary witness, Ms. Mitchell.
After considering arguments from both sides, the trial court denied a formal continuance but postponed the trial for two days until Wednesday, September 2. The jury was struck that Wednesday afternoon and testimony began on Thursday, September 3.
Appellant emphasizes the distinction between right to effective counsel and the right to counsel of a defendant's own choice who has sufficient time to prepare a defense. Gandy v.State of Alabama, 5th Cir., 569 F.2d 1318 (1978). Appellant does not argue ineffective counsel, and a review of the record convinces us that appellant was well represented.
In arguing a violation of due process rights, appellant relies heavily on Gandy, supra. The Gandy court, in a habeas corpus action, held that the defendant was arbitrarily denied his right to adequately prepared counsel of choice, thus denying him a "fundamentally fair" state criminal proceeding.
In Gandy, the defendant's retained counsel informed the court the day the case was set for trial that he had a civil suit pending the next day. The attorney announced his intention to attend the civil trial and moved for a continuance until the civil trial had been completed. The trial court denied this motion and directed that the attorney's associate try the case. The trial began that day with the retained attorney present, but the attorney made good on his threat and did not attend the trial the next day. It was uncontroverted in the record that the retained attorney's associate who took over the case was totally unfamiliar with the case and unprepared to try it. The Fifth Circuit Court of Appeals held that the trial court abused its discretion by simply denying the continuance without considering any possible alternative.
Although the Gandy court lists a number of factors to be weighed in balancing the defendant's right of prepared counsel of choice with the interest of prompt and sufficient justice, the court expressly stated that the decision was limited by its unique facts. Gandy, supra. 569 F.2d at 1327. The facts in the instant case sufficiently differ from Gandy to render it inapplicable. The main distinction lies in the preparation of the substituted counsel, and in the actions of the trial court.
In Gandy, the associate counsel was totally unfamiliar with the case and thus was completely unprepared to try the case alone. In the instant case, there are numerous indications that Mr. Smith was somewhat familiar with the case and had been involved in its preparation. During the pre-trial motion on the issue, appellant's counsel admitted that he wrote a letter informing the court his firm had just been retained by appellant and asked for a continuance. Mr. Smith later told the court that he had worked on some but not the major portions of the preparation of the case, had previously interviewed the appellant about the case, and had "talked to some people" about the case. He further *Page 144 
stated that he would probably assist Mr. Elledge in the case by sitting with him at the counsel's table.
There are also indications from the trial court itself that Mr. Smith had been involved with the preparation of the case. Mr. Smith, while cross-examining Ms. Mitchell, asked her if she remembered talking with him on the phone about three weeks before the trial. Mr. Smith asked her a good many questions on cross-examination about the conversation he had with the witness.
Besides evidence of Mr. Smith's involvement in trial preparation, the trial court's actions in the instant case further distinguish it from Gandy. The Gandy court placed particular emphasis on the fact that the trial court did not consider any alternatives besides the simple denial of the motion for continuance and immediate trial of the case. In the instant case, the trial court recognized Mr. Smith's difficulty because of the hospitalization of his partner. The trial court allowed Mr. Smith two extra days to prepare instead of enforcing an immediate trial. The trial court took note of the fact that Mr. Smith would be under a burden because of other commitments, but the court felt that the extra time was sufficient. Because of delays on the day the trial was re-scheduled, testimony was not taken until three days after the trial was originally called. The court in the instant case also emphasized for the record that Mr. Elledge knew the Friday before the original trial date that he was going to be incapacitated, and the trial court informed Mr. Elledge of the State's strong resistance to any further delay. Thus, Mr. Elledge, and presumably Mr. Smith, knew five days before the case Mr. Elledge would be incapacitated and that the State would strongly resist any further continuance.
In light of the particular facts of this case, and after balancing the various factors listed in Gandy, supra, we find no clear abuse of the trial court's discretion. See Murphy v.State, Ala.Cr.App., 399 So.2d 340, cert. denied, Ala.,399 So.2d 347 (1981).
Appellant also contends that the indictment was fatally flawed because (1) the indictment does not allege when the prior offense occurred, (2) the indictment violates the rules of evidence, averring that appellant had been previously convicted of violating the narcotics statute, (3) the indictment does not name the buyer of the drugs, and (4) the indictment does not mention § 20-2-76, the enhanced punishment statute which renders his twenty-five year sentence improper.
There is no merit to appellant's arguments.
Omitting the formal parts, the indictment reads as follows:
 ". . . [Ron Canada], . . . having been previously convicted of violating the Uniform Alabama Controlled Substances Act did, on to-wit: the 17th day of February, 1981, while at or near Highway 77, Attalla, Alabama, unlawfully and intentionally sell, deliver or otherwise dispose of a quantity of methaqualone, a controlled substance to another, in violation of the provisions of Title 20-2-70 (a) of the 1975 Code of Alabama."
This court has previously held that the time of a prior conviction need not be alleged in an indictment, and a demurrer is properly overruled on that ground. Kidd v. State, Ala.Cr.App., 398 So.2d 349, cert. denied, Ala., 398 So.2d 353
(1981). The court has also held that an indictment charging violation of the Uniform Controlled Substances Act which contains an allegation that a defendant was previously convicted of the act is not improper. Napier v. State, Ala.Cr.App.; 344 So.2d 1235, cert. denied, Ala., 344 So.2d 1239
(1977). Our Supreme Court has also held that, in charging a violation of the Act, an indictment need not specify the buyer or vendee of the narcotics. Adkins v. State, 291 Ala. 695,287 So.2d 451 (1973).
Further, the indictment is not fatally flawed because it fails to mention § 20-2-76, the enchanced punishment provision of the Act. An indictment need not set out the statute a defendant is charged under for reasons that the courts may take *Page 145 
judicial notice of public statutes. Frye v. State, Ala.Cr.App.,369 So.2d 892 (1979).
Moreover, the appellant's demurrer was untimely. Appellant was arraigned on April 30, 1981, and pleaded not guilty. Appellant did not file a demurrer to the indictment until September 2, 1981. One ordinarily waives any irregularities in the indictment by appearing and pleading in the trial court, and a plea to the merits is considered an admission of a valid indictment. Harrison v. State, Ala.Cr.App., 384 So.2d 641
(1980); Stringer v. State, Ala.Cr.App., 372 So.2d 378, cert. denied, Ala., 372 So.2d 384 (1979). The only exception to this is when an indictment fails to include an essential element of the offense which leaves the accused unaware of the nature and cause of the charge against him. The alleged defects in the present case do not fit this exception.
This court has today held that it is not mandatory to allege in the indictment prior conviction of the Uniform Controlled Substances Act to make operative Section 20-2-76, Code 1975. See Luker v. State, 424 So.2d 662 (Ala.Cr.App.).
We find no error in the record, and the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur. *Page 492